We'll proceed now to hear argument in Caleigh Wood v. Evelyn Arnold. Would the parties come forward, please? May it please the Court, my name is Kate Oliveri and I represent the appellant Caleigh Wood. Under the familiar Lemon Test, government action must satisfy three distinct prongs in order to comport with the Establishment Clause. Violation of any one of these prongs renders the act unconstitutional. Here, the District Court erred in analyzing all three prongs to hold that statements that promote the religion of Islam do not violate the Constitution. This error is exacerbated by the fact and the requirement for courts to be particularly vigilant in ensuring that public schools comply with the Establishment Clause due to their compulsory nature. First, the curriculum at issue violated the secular purpose prong of the Establishment Clause. The Supreme Court recognizes the difference between the scholar's study and the evangelist's mission statement. Isn't this a case that's all about context? I mean, I think you would agree that if you properly attribute, say, the purposes of study, comparative religions, whether it's Hindu, whether it's Buddhism, which some say is not a religion, whatever, that you could say that in the Islamic faith, it is believed, da, da, da, da. Your contention seemed to be is that there is a teaching here that is offensive to Christianity in the sense that it requires you to answer something that either promotes one or the other. Is that correct? So, yes, plaintiffs have never contended that religion needs to be completely absent from schools, that there are factual, scholarly ways to look at religion and comparative religions. So they could teach every bit of this if you just properly attribute it to make it clear, I'm not trying to influence you, but even if I am, we can discuss in a classroom setting at least back and forth, but at the end of the day, we're not trying to influence or not even influence, we're just informing you that this is contended. Would that be appropriate? I do not believe that what was taught in this curriculum... But would that be appropriate, what I just said? That to teach it in that manner with attribution and to say, under the Islamic faith, it is believed that the religion is a peaceful religion. To phrase it as such, I still believe that would violate and go more towards the excessive entanglement clause, because then there you're looking and trying to determine what is the heart of a religion. But here, I don't even think we need to go into... Well, then how are you supposed to teach about religion if you're not allowed to... I don't understand, what does it mean that all the times the Supreme Court has said, sure, you can teach about religion, how are you supposed to do that? There are certain facts that are related to religion. So, for example, for Christianity, it is a fact that Christians believe Jesus is the son of God. That is a fact, but that's not excessive entanglement. And that's not what we have here either. I know, but I guess what I'm trying to figure out is, on the one hand, your brief acknowledges this rule that it is okay for public schools to teach about religion. But on the other hand, you suggest that it may involve an establishment clause violation if schools say something about various religions. So how does that work? Not if they say something, it's if they cross the line from a fact about a religion to a subjective statement. For instance, here we have the statement that most Muslims' faith is stronger than the average Christian. And you look at that, that is, I mean, it's replete throughout the record, criticisms of this statement. It's called unartful, lacking in tact, wanting an accuracy. That is not a statement of fact about... that the purpose was entirely to promote Islam, don't you? And so how can you say that based on what we have here? We have what you've been referring to as the comparative faith statement. But when you look at everything that is being taught about Islam, how can you say that the school was entirely motivated by a purpose to advance Islam? I think that it boils down to this statement, is that there needs to be a secular purpose to this statement. Because this is very important, just kind of as a matter of judicial manageability. It is your view that if the school teaches about religion, literally every sentence, every sentence on a PowerPoint, every sentence on a test, every sentence that comes out of a teacher's mouth must individually be analyzed under all three prongs of women? Because that's a formidable undertaking. On the other hand, then... Just yes or no. So you think each statement... Yes, I believe that statements can violate the Establishment Clause. Obviously, it would depend on the statement, but... So we would have to look at every statement. Every, I mean, every challenge statement, if there's something that promotes... All students should convert to Christianity. All students should convert to Islam. But if it's in the context of the world history class, well, let's look to the other context of the, you know, the context of the class at whole, rather than the purpose of the statement. Well, that's different. If all students should convert to Islam is a teacher's statement. But to say that Islam teaches that all students should convert to Islam is different. And the statement by statement that Judge Harris is going to is, do we have to go to court every time someone says something while teaching the subject? They're teaching the subject of Islam, extremism, they're talking about religion in general. One statement, one slide is what we appear on here on this particular one. And that one statement puts us in court. Do we do that or do we look at it contextually and say, they are teaching in school. They've not said anything negative to promote Christianity or to take away from Christianity. By the way, the teacher is Christian. And who's teaching this. How is that going to work? How is that manageable, to use the word used by Judge Harris, for us as a court to micro bandage schools when they start teaching a subject on religion. We're going to start analyzing every statement that's made. One statement, one day, out of all the days of school, and all of a sudden we're saying this is blatant promotion of Christianity. Take it as true. That it's hard to prove that statement. I agree with you on that. Totally hard to prove that statement. That statement is out there. But does it make it blatant promotion of Islam is the difference. So there are a few things I want to address. First, I think your emphasis that this is not just an offhand statement by a teacher who maybe made a mistake in the moment. This is a slide that is developed and put forward for the students. Second, with that, I don't think it matters. Well, in some ways, I mean, it would be... The PowerPoints, you never... The thing about PowerPoints, right, is you never know what the teacher says. PowerPoints are out there. We have no idea what the teacher said to sort of explain and expand upon these statements. We do not, so we have to take the statements as they are and see how that was set forth. Another point is that it's not just a blatant promotion. In Lynch, the Supreme Court said that subtle government advocacy is also prohibited. And so even if... Oh, sorry. With the respect that the teacher was a Christian, that does not matter. The teacher, an unwitting person or teacher who pulls things off the Internet, we don't know who created this slideshow. So I don't think that that goes to the purpose of the slide, a purpose of the teaching of this statement. I think the statement does not have a secular purpose, and therefore, it violates the secular purpose prong. You'd be all over this if this was an Islamic teacher, though, wouldn't you? It wouldn't hurt. It wouldn't hurt the case. You wouldn't give that little neutral objective response if that was up. So, oh, no, it doesn't matter. The purpose was this. In this case, we do not know who created the slide. So, I mean, I'm taking the facts as I find them. Would it help the case? Would it help? If it comes back in that form, I want to hear that, too. It doesn't matter who created the slide because you don't know who did it. It doesn't matter if he's Islamic. That's not what would be argued in this case. This teacher presented this slide. Among other things, the statement, most Muslims' faith is stronger than the average Christian, has no secular purpose. The record is void. But we can't just airlift that one statement. We have, as the judges have been saying in their questions, we have to look at what was presented as a whole. And how can you say it has no secular purpose? To learn about what other people in the world think. And we do not contend that, which I believe that the more plagiarism. So, excuse me. So, I didn't mean to cut you off there, but let me ask you then. So, do you lose your case if we look at the whole lesson that was being provided as opposed to the one statement regarding Muslim faith being stronger? Does the success of your case as to the Establishment Clause claim rise and fall on whether we look at the whole lesson or just one sentence? It does not fall with just the one. Okay, why not? Because all we've been hearing is having you tell us why that one statement is objectionable. And so, if you're saying that the whole context of the presentation violates the Establishment Clause, you haven't told us that yet. Yes, and there were other aspects as well. For instance, the slide also set forth that the Koran is set forth from Allah. Whereas, Christians and Jews merely believe that the Bible is- That's on the slide? It is on one of the slides, yes. Is it a slide? I thought it was in the work show. I believe it was on a slide and was also in a quiz. I think they related to each other. It's on the Joint Appendix at 593, I believe. Don't we consider the context of how this is being taught? I mean, if it was just in a vacuum, where you just walk in one day and looked up on them and said, okay, everybody, this is quiz. These are things you learn. But this is being taught in the context of teaching about Islam. And even the subject of Islamist extremism is being taught. And to get into the whole idea of what the basis of what some would contend or others may not contend, I'm not going to get into that. But in terms of teaching it, wouldn't it be relevant to say most Muslims' faith is stronger than the average Christian? Highly debatable. I agree with you totally on that. I don't know if that's true or not one way or the other. But the point being is that in the context of extremism, someone has to really believe a lot of what you're doing to do the kinds of things. And the word most, which probably is the most arguable part about that whole thing, it is the most. It could be some. It might be a better word to use or a few. Because you've got to believe that there are a few strongly Christian. That's probably true. If you go and kill yourself or something like that, it's true on the Christian side. You do things to kill yourself. So it goes back and forth. But the point being is this is a contextual thing in which learning is occurring. And the question is, is this a blatant promotion of Islamic faith or is it teaching or is it exposing for discussion? And you don't want to – it's a thin line. I see where you're going with that. It could be a thin line. But this is a school teaching. It's not a mosque. Well, like I said, in Lynch, the Supreme Court stresses that subtle government advocacy is permitted just as much as blatant government advocacy. And in the school context when we're dealing with the involuntary teachings and when the students are – they're required to be there and they're young and impressionable, the courts should be particularly vigilant. And that's what we're asking the court. Here's another point. We will accept that the strongest religion in this country is probably the Christian religion. We're going to see – if we go your way, we're going to see this case come back to us in a different form. And it's going to be in the form of someone saying something in advance of the Christian belief. And it continues to be said, you are promoting that over Islam or you're promoting over this. Is that not going to lead – if we go your way, we're going to have to go that way on every case and tell me what we're going to do when it goes with all of the – we've been through religious, we've been through the other cases of religious. Most of this come in that context. So how is that not going to affect those cases if we go there? Again, I don't think that you're going to see a lot of statements that are, as I believe, blatantly promotional of one religion over another. Tell me what's blatant in most Christians' faith is stronger than the average – most Muslims' faith is stronger than the average Christian. That is saying that the school is purporting to have analyzed the faith and different religions' adherence to their faith and then setting one above the other. That is setting that the Muslims are practicing their faith, engaging in their faith more thoroughly and better than Christians are, which would indicate to – Indicate faith in what? The Islamic faith versus the Christian. It says most Muslims' faith is stronger than the Christian – than the average Christian. If you read that statement literally, you're saying the faith of Muslims in Islam is stronger than the Christian faith in Islam. I see my time's up. May I answer your question? Because there's no – it doesn't tell you what kind of faith. It's just most Muslims' faith. And if you're going to use the word faith, you're going to look back and it says faith in what? Faith in the belief in the Islamic faith is stronger than the average Christian. And then it says period. It doesn't say stronger than the average Christian has faith in Christianity.  Let me answer the question. I believe from the – again, from the context of the slide that it's clear that they're not saying – Wait a minute. You don't want to do context. Remember? You don't want to do context because context makes us look at the whole thing. You want to look at just this statement. So you don't want context, do you? I believe even in the context of the curriculum that the materials violate the Establishment Clause. I want to make sure you're clear. You now want us to consider the context of the curriculum. Is that what you're now saying for the purpose of looking at this statement? For the purpose of looking at the statement, I think the more ready meaning from reading the statement is that they're talking about Christians' faith in Christianity. I don't think it's a plausible reading to say – I'm getting confused. I'm sorry. It's my problem. I'm confused. But I want to understand your argument. Context. If we look at context, we're going to look at the whole course and how it's done. Or, as I understood your argument, is this statement by itself stands as a blatant promotion of the Islamic faith. If that's true, we don't look at context. So when we look at this statement and it says most Muslims' faith, no description of what kind of faith, which I guess you could just say that faith in believing in Islam is stronger than the average Christian, period. And what do you read from that other than people who believe in – Muslims who believe in Islam are stronger in their faith in Islam than the average Christian. That is absolutely true from my perspective, is it not? From the record, I don't think that that's the reasonable observer's reading of the statement. You had the curriculum specialist who said the statement – This sort of goes back to what I was saying at the beginning about PowerPoints. But that looks to be – if you're going to look at that statement in a vacuum, you've got to analyze it in the micro way I'm doing it. But if you're going to do context as you want to go, I think you've overdid it to now looking at the whole curriculum. Even with the whole curriculum, I do believe that statement on top of the way the Koran versus the Bible was phrased, on top of the forcing the students to write out the Islamic conversion prayer, that those facts, that context, violates the establishment clause as a promotion of Islam over Christianity. I think in Levi-Weisman, the Supreme Court, it was one graduation prayer that was unconstitutional. So if there are no further questions at this moment – Okay, thank you very much. Thank you. Mr. Scott? Good morning. May it please the Court, Andrew Scott. On behalf of Evelyn Arnold and Shannon Morris, before I get into my arguments, I'd like to address the questions that the Court spent most of the last 20 minutes asking my colleague. And that is that context is crucial. The Supreme Court says it is in Lynch versus Donnelly. In fact, the Court in that case said to focus exclusively on the religious component of any activity would inevitably lead to its invalidation under the establishment clause. And I agree with Judge Wynn's comment that were this Court to rule in appellant's favor, this Court would inevitably be receiving appeals by appellants who objected to the alleged indoctrination or endorsement of other religions. And this is essentially why the Courts have held that – Anything you say about religion, you can go in there and say anything on religion and then boom, there's a blatant promotion of that religion. And that's why context is so crucial and why the Courts have said that a heckler's veto would result if the Courts gave credence to any one individual's objection. But look at that statement. I'm just trying to make sense out of this. If it is true that most Muslims faith – well, not true, but if it's true that the contention is that the statement alone is a promotion of Islamic faith, and I don't know if you're looking at context. If you're not looking at context, if it's most Muslims faith is stronger than the average Christian, period. It just – it seems empty. I don't know what faith is. I don't know what – I don't know what it's promoting. Tell me, maybe from your perspective, I'm trying to understand. Is that statement read to say that Muslims as a faithful people are more faithful than Christians as a faithful people? Well, we would argue that it doesn't, but even if it does, it still doesn't fail the second prong of the establishment of the Lemon Test because – Can you just say what – because I am – I read that statement. Let's go show different observers. I thought that the point of this slide was to sort of kind of take on Islamophobic misconceptions, that Islam is not a real religion, it's just a political ideology, and that the point here is, like, actually, when – you know, the Muslim faith is a very strong faith, and it requires a lot of its adherence, and you learned that on the quiz, too. There's the tithing, the fasting, the four-day – four-times-a-day prayer, and that that was the point of this. But that's how I read it, but you tell me what the point was. Well, I would agree. I would agree, first of all. The testimony was that this unit was taught as a means of exploring Islam's influence on the rise of Middle Eastern political entities in history and up to the current day, and we would contend that without exploring the basic tenets of Islam – and really, that's all that the PowerPoint slide at 590 in the appendix and the fill-in-the-blank worksheet at 699 do. They basically just require the students to regurgitate or parrot back the basic tenets of Islam so as to understand how that religion had an effect on the various political entities that they were studying at the time. And I think it's important to take a quick step back, because I take it from the Court's questions about context, that it's important to realize that the Lemon Test, although helpful, is not entirely dispositive, that the Court should look more broadly as to the purposes of the Establishment Clause. And on that point, if I may, just read a sentence or two from Lynch v. Donnelly. The Court there says that, "...in our modern, complex society, whose traditions and constitutional underpinnings rest on and encourage diversity and pluralism in all areas, an absolutist approach in applying the Establishment Clause is simplistic and has been uniformly rejected by the Court. Rather than mechanically invalidating all governmental conduct that confers benefits or gives special recognition to religion in general or to one faith, courts must instead scrutinize the challenged conduct to determine whether in reality it establishes a religion or religious faith or tends to do so." And this Court, in Myers v. Loudoun County Public Schools, citing to Lynch v. Donnelly, made clear that the measure of constitutional adjudication is the ability and willingness to distinguish between real threat and mere shadow. And we would submit that in this case, at most, what we have is mere shadow. What is the purpose of that statement, though, being in this curriculum? Why would you even teach that? Well, Mr. Bryden, the teacher, testified that he doesn't recall teaching it. He doesn't recall distributing it. It's on the slide. Well, the Court resolved that dispute of fact in favor of the non-movement below at summary judgment. Which we accept to hear, don't we? He doesn't recall, as Ms. Oliveri said, there's no evidence in the record whatsoever that he said anything to that effect. Let's assume. Let's say it is. It is right there on the slide. Most Muslims' faith is stronger than the average Christian. What's the purpose of that? Well, the purpose, I think, as Judge Harris stated earlier, which is an inference can be drawn that the strength of faith, of adherence to the Islamic faith, is strong and, therefore, it's had an effect on the political empires in that region of the world for the past 600, 700 years. So why teach the conclusion without giving the facts of it? I mean, if you want to say, well, Muslims pray more times a day than the Christians, I mean, that might be a fact, something like that. Why teach the conclusion, which really is more of an opinion? And it may be for that purpose, but it's truly just a debatable opinion. I wouldn't disagree with that. And, in fact, I conceded that point below, both in our papers and our brief before this Court at the summary judgment hearing. I would agree that it's inartfully worded. It's incapable of empirical verification. But the key is that... Well, why not just fix it once it's brought to your attention? Why is that? I mean, why wouldn't you just fix it? If you've got a parent who's upset that you're teaching my child this, and it looks like to me this is an easy fix. It ought not be in the Court. It ought not have even left from that school district. You should have said, sir, I'm sorry. I don't like the way in which your language came to me, because you said some pretty harsh things that weren't so good. But we will reword this in a way that we believe would be acceptable. Well, it may have eliminated the existence of this appeal had that happened, but I don't think... Don't you think it would have? I mean, we can think of a lot of ways this thing could have been worded a little different. I don't understand. To keep it as it is and push it as though, well, I'm entitled to teach this. Well, it was a one-time incident, and so even after the parents objected to it, it never happened again. The fact that the school system took the position that it didn't constitute endorsement is what resulted in this lawsuit and this appeal. Have they removed it? Are they still teaching this? I'm sorry? Are they still using this PowerPoint that contains this statement? To my knowledge, no. There's certainly nothing in the record that suggests that it has been before. And for the record, there's nothing in the record that shows where this PowerPoint came from. There was some speculation that perhaps a substitute teacher pulled it off the Internet. That was a dispute of fact. It just seems to be a personality thing. I mean, I'm gathering from it and even from the statements and the plaintiffs, as I said, it was very forceful. They did acknowledge it's okay to teach a parent a religion. They usually want folks trying to indoctrinate or influence as a child. And if that's believed to be happening, out of respect, one would simply say, well, I certainly apologize. We never intended that to be. That won't happen again. We've taken it out of the curriculum. And if it comes up, it will be reworded differently. We don't think anything was wrong with the statement, but we're going to change it. Frankly, the record is. Why would anybody sue if you told them that? I suppose that would be up to the prerogative of the parent and the student. We don't have any. There's no record of any subsequent lawsuits. I'm not talking about the prerogative of the parent or student. It didn't happen. So there was no prerogative for the parent or student. It just simply said, we're tired of teaching. Well, in this case, though, and I'm piggybacking a little bit here on what Judge Wynn was saying. In this case, isn't evidence in the record that the father said he didn't want the child taught about Islam, period? Absolutely. Okay. And, in fact, there was a meeting between the principal, the assistant superintendent for instruction, and the parents very shortly thereafter at which they discussed the curriculum. The exact details of that meeting are not really clear in the record, to be honest. And to be clear, during that time, Mr. Wood was banned from the school based on his language and his behavior, which is not part of this appeal. But I think to the extent the court is raising what happened on those days very shortly after this issue arose, that is clearly relevant. Mr. Wood called the assistant principal, Ms. Morris, made threats, used profanity. The quotes are in the opinion from the court below. Okay. That's not really relevant, though, to whether they were endorsing religion. It's not. I only raise it to the extent that the court is asking why didn't the school system take a more conciliatory approach. I would argue that they did take a conciliatory approach. The proof is in the pudding in that regard in the sense that there's been no subsequent lawsuits against this school system relating to this curriculum. To my knowledge, there's not even been any complaints about it. But be that as it may, for purposes of this appeal, there's nothing in the record that shows that there was any allegation of any establishment clause problem other than this day or two in October of 2014 when Mr. Wood saw this PowerPoint slide allegedly on his kitchen table and his daughter looking at it. So I think it's crucial because the court has emphasized that context matters. And so even if we take – I would concede that this comparative faith statement, as Judge Hazel coined it below, is somewhat subjective. It's not necessarily fact-based. But we have to consider it in context. And the court has made clear in Brown v. Gilmore that the first prong of the lemon test is a low hurdle that is satisfied as long as there is some secular purpose. And it's only violated if the action of the curriculum or instruction, as it is in this case, was entirely motivated by a purpose to advance religion. Here we don't have this. It was clearly an academic exercise. Moving on to the last prong, which we haven't discussed yet, the excessive entanglement. The court below found, I think correctly, that there was not any entanglement, much less excessive entanglement. The court in lemon says that the factors to be considered are the institutions that are benefited, the nature of the aid provided, and the resulting relationship between government and religious authority. Here we have no direct benefit to Muslims, no aid to Muslims, no relationship between the school system and any Islamic organization, no clergy involvement, no clergy instruction, unlike in McCollum v. Board of Education, the Supreme Court case from 1948. We don't have this court's opinion in Bargout v. Bureau of Kosher Meat in 1995. Any facts where clergy is involved or given any authority, as the case was there. And we have no continuing state involvement, as was the case in the Mellon case, Mellon v. Bunting, cited in our brief, where the court struck down a daily prayer during dinnertime at VMI. In the alternative, I want to raise the issue of qualified immunity. We raised that issue below both the motion to dismiss stage and at the summary judgment stage. The district court on summary judgment did not address that issue at all, because he didn't need to in light of his ruling on the merits. We would argue that in the alternative, to the extent this court is inclined to... What would be your basis for qualified immunity? Well, the basis for qualified immunity is that the law wasn't clearly established as to whether or not a teacher in a school system could... You think that just gives us a nice easy way, because the Supreme Court has made clear you can jump right to that without going to the rest of it, right? Correct. And Judge Hazel actually did that on motion. You're saying the law is not clearly established. Basically, we would write an opinion and say, assuming that there was a violation, this law was not clearly established. Correct. It's not clearly established here. In the cases of Ashcroft v. Allkid and Safar v. Tingle, it's made clear that clearly established law must be particularized to the facts of the case so as to avoid transforming qualified immunity into a rule of virtually unqualified liability. And so the standard here would be whether it was clearly established... This is constitutional law. I'm sorry, sir? This is the establishment clause. Constitutional law in which the allegation is that there's a blatant attempt here to promote a religion. What about that is not clearly established, that that violates the Constitution? That's the allegation, but I would contend that a reasonable, informed observer, which is what we have to... which is the perspective from which we have to analyze... It's connected to the merits. Well, we have to review this from the perspective of a reasonable, objective person. That's the endorsement enhancement to the second prong of the Lemon Test. That's why the judge went to the merits because you just determined the merits there. Well, he didn't... And if you get to the merits, clearly established goes away for the next case. Well, as I... Why would you advocate ducking this issue and going straight to qualified immunity and leaving out of here and therefore it's not clearly established? I guess you would because then it wouldn't be clearly established, would it? Well, I don't think he... Frankly, I don't think he got to the qualified immunity question because the merits were so clear. And to the extent... Frankly, to the extent the court did not address the issue and it wasn't briefed at length at the summary judgment stage, we would argue that at worst this court should remand the case for consideration on that issue. We certainly aren't encouraging the court to do that. I think it was a good reason he didn't reach it, but I could be wrong on that. Subjective statements about a religion is used in a class. Can it be made without violating the establishment policy? I'm sorry. Subjective statement in a class. A statement like... A subjective statement. ...Islam at its heart is a peaceful religion, one of the statements being challenged here. Yes. I mean, that's a statement that's likely to draw a lot of criticism. I mean, why would you make such a statement? As I said before, and the record is clear that the content specialist said he wouldn't advise that that be taught. But as the court... Wait, I'm sorry. The content specialist said that about the Islam is at its heart a peaceful religion statement? No, that most Muslims' faith is stronger than the average. Right, but Judge Wren was asking you about a different statement. The Islam at heart is a peaceful religion statement. I would lump them together. I would say that the comparative faith statement is arguably the more problematic of any of these statements. The district court acknowledged that in its opinion. But, again, when you take a step back and look at the context of the entire unit, and even of the documents themselves, the PowerPoint slide and the fill-in-the-blank worksheet, it's clear that this was an academic exercise, not a religious one. And to hold otherwise would be to encourage an incredible number of cases to come to this court. And, frankly, it would require teachers to engage in determining how orthodox their lessons are, which the courts have said would be actually a violation of the Establishment Clause. In fact... I don't think it would take much because you're dealing with religion. Most things you can teach controversial things about. You can go one way or the other and say, I believe this is this or not. But religion is a little special. That's under the Establishment Clause. And I think it can be done, but it ought to be at least clear. The context shouldn't be something you should have to infer as a student. You've got young impressionable students in the classroom. You should say, we are teaching about Islamic faith today, and these are some of the things they believe in. And if you list those facts, I think you're pretty safe on it. But when you throw out subjective statements that require a student to answer, in the case of the quiz, or a statement, in this instance, Islam is at the heart, it's a complete piece of religion. Now, arguably, that gets the president back. President Bush sort of said that himself. That doesn't make it so, but he did say it. I mean, when you do that, you're getting very close to a question of whether the school is putting out a view that appears to be endorsing a religion. Well, I would again agree that the comparative faith statement is by far the only statement that really is arguably objectionable. And could the school system, could my client do it over again? They probably wouldn't have taught that statement. As I said earlier, the record isn't clear that it ever was taught. We don't know what the teacher said to supplement the materials that were provided. All the court has before it are these two documents, which on their face, from a reasonable objective perspective, from our perspective, do not constitute endorsement. So you're clear that this statement has been removed from the curriculum? It's no longer being taught? I cannot say that as a matter of fact, Your Honor, no. So it could be taught again. In other words, this statement, this slide could be put back up again. Well, I don't want to speculate, Your Honor. As a matter of practicality, given the nature of this. Your speculation would be helpful because if you're telling me it's capable of being repeated, then it's an ongoing conduct. But if you're telling me, no, the school changed its policy on here and this is being taught in a more awful way. Well, I don't believe it's being taught at all anymore, as I said earlier. But I don't want to speculate to the extent that it's not entirely clear in the record. But the court doesn't get to that capable of repetition argument unless there's an underlying violation. What's the relief being sought here? Declaratory relief. And injunctive to keep you from doing it? I believe so. No, I thought the injunctive claim was – I don't understand. I thought the procedural posture of this case was that the injunctive claim was dismissed because the case is weak. The preliminary injunction claim was dismissed as moot, yes. So there's no injunctive relief at stake. Correct. I misspoke. Is this about damages? No, it's just clearly seeking a declaration of a violation occurring in the past. Okay, no damages. Correct. But only because the student has graduated. Correct. So there's no live – okay. Correct. So what's the end result? I'm trying to understand. We say, okay, violated, then what happens? Well, if this court were to reverse, the result would be an order entered by the district court stating that the school system improperly endorsed – violated the establishment clause. Can't use that clause, that slot. Well, I would certainly say that that's not a basis for reversal, no. That's a singular statement in a broader context that clearly is not – That's the one being challenged. We're just trying to figure out, were you to lose this case, we would reverse and tell the district court, enter declaratory relief. So what would come out of the case would be a declaration that this sentence, and I guess the sentence on the worksheet, those two sentences do not comply with the Lemon Test and violate the establishment clause. Correct. That's what I understand the appellants to be seeking. And the effect, I assume, would be that then you would not use them anymore. That's what I understand the appellants to be seeking. Okay. Correct. Just don't use those statements. That's my understanding of the complaint, Your Honor, yes. But you say you don't think they're being used anyway. Well, correct. But getting to Judge Harris' point, there's no request for prospective relief. It's merely a retrospective – I got that. Maybe I'll hear it from the other side. I'm trying to understand. A case like this, why wouldn't you just say I won't teach it again? Are you sure that there's a claim for declaratory relief still in front of the court? I may be misunderstanding, but I thought the district court said declaratory relief is prospective relief, and I thought the district court said all of your prospective relief claims are moot. Correct. The prospective claims are moot. But all that remains is – I thought all that remained was a damages claim, no? Then why are we even talking about qualified immunity? I thought this was a case about a damages claim. Well, nominal damages, Your Honor. But the primary claim, and appellant's counsel can correct me if I'm misstating their complaint, is to seek a declaration. I know that was in the complaint, but I thought the district court dismissed the claims for declaratory and injunctive relief as moot because those are prospective remedies, and this student has graduated, and there is no reason to believe she will ever face this same conduct again. I believe that's correct with the exception of the remedy sought of a prior violation. So you believe that there is a claim for declaratory relief still in this case? Yes. Okay. Thank you, Your Honor. Thank you. Is there still a claim for declaratory relief in this case? My understanding is that it's just for nominal damages with the understanding that a court ordering that the conduct violated the establishment clause would prevent them from doing it again. Break it down for me. What do you want? What's the end result you want to have in this case? If we rule in your favor, what do you think is going to happen then? If you rule in our favor, we would like the slide shows and the other statements, so it's not just the one statement in the vacuum of most Muslims' faith is stronger than the average Christian, which I think is the most blatant. What if we just find that one? We just find that statement to be the cause of it. Then what happens? Well, there are also problems with the way it was phrased, that Islam at heart is a peaceful religion, and the fact that the conversion prayer was required to be written. The intention is there, but if our determination is that it's that one statement on that slide, that's the problem. What happens? We would ask you to order the district court to enter a dollar for nominal damages in recognition of past constitutional. How much is nominal damages? One dollar. So a dollar? One dollar. Sounds like, what was that movie, Trading Places, where they go up there and says, So for a dollar, I get the point. You're making a point that you cannot teach this in school, but if we wrote it to say that contextually you could do so, but in this instance the context didn't exist, and all you do is probably do what already schools should be doing or are doing, and that is they're probably teaching this in a contextual basis. What's being gained by this? I don't think there's a context that you can teach subjective statements about any religion as true factual statements. So the point that would come from our case is that every case from now on, every school would have to look at every individual statement, and therefore it could be the basis for bringing a cause of action as you've done. We do have multiple statements and multiple issues here with this curriculum. But the district court said that you only, in moving for summary judgment, the two things you relied on were the one sentence in the worksheet and then the comparative religion statement. Those were discussed most fully in our brief, but the other statement, the grant is the court. So the district court was wrong. You think the district court should have gone on to reach other things? They were, they are in the record. But the district court didn't say they weren't in the record. The district court said in moving for summary, look, I'm reading your summary judgment brief, and I see two things, and it's the obligation of the litigant to tell me the grounds on which you are seeking summary judgment, and I've got these two things. Was that incorrect? I would have to review the brief to see exactly what we put forth in our summary judgment motion. But when looking at those two statements and the, I mean, the other, like I said, the other ones I know are in the record. And he agreed that they were in the record, but his view was, I'm the district court judge, you're the litigant, you tell me the grounds on which you would like to receive summary judgment, and you gave me two statements. Yes. Well, again, most Muslims' faith is stronger than the average Christian, and forcing students to write the conversion prayer of the Islamic faith promotes the religion of Islam, and that's something we would like to stop in the schools. I don't think it's unreasonable to ask teachers to look at their curriculum and make sure that they're not promoting a religion and they're teaching religion as fact. What promotes religion, if I ask just simply, what in the so-called shahadah statement promotes religion? It just tells you what they believe, right? Well, the student was forced to write out that the only God is Allah and that Muhammad is his prophet. But it's under a heading that says beliefs and practices. Right. It's clearly a list of Muslim beliefs. In that instance, and this goes also to the free speech violation, is that it is a prayer that she is being forced to write out. She doesn't have to write the whole thing. She has to fill in the blanks. It's a fill-in-the-blank worksheet, and it's a list of beliefs and practices. What they believe. The five pillars of Islam. Of Islam, I'm sorry. And I think in Thomas V. View Board, they say that it's not the job of the judicial to decide what does or does not violate the belief system, what is or is not, what does or does not constitute the proper. Yeah, I understand your point on the comparative faith statement, but I don't even come close to getting your point on the shahadah worksheet because all the students were being asked to do was simply recite what Muslims believe, and this is what they believe. It's not saying that you should believe or that by filling in this worksheet, you're signing up for the religion. It doesn't say anything. It just says that's what these people believe. It is not just a statement of their belief, though. It's the conversion prayer, and it forced Ms. Wood to violate her religious beliefs. Is there anything here that calls for the conversion prayer? I don't believe so. You don't have a free exercise clause claim, do you? It compelled her to express beliefs that were not her own. So yours is a compelled. There's a compelled speech claim still alive. I mean, okay. Thank you. Okay, thank you very much. We'll ask the clerk to adjourn court, and then we'll come down and recouncil. This honorable court stands adjourned until 4 p.m. God save the United States and this honorable court.
judges: Barbara Milano Keenan, James A. Wynn Jr., Pamela A. Harris